All rise. Court is now in session. First is the Illinois Public Court. Justice Mary Ann Mason for that. Please have a seat. Good morning. Good morning. Good morning. Before we begin our argument today, normally we would have a panel of three judges. We sit in panels of three. Our third panel member, Justice Aurelia Kuczynski is indisposed this morning and regrettably cannot be here today. We are recording the argument. She will listen to the tape of the argument and participate in the disposition of the case. So Mr. Brook, would you call our case please? Case number 13-4012, People v. Matthew Gray. Will counsel please approach? Good morning, Your Honor. Chris Bennett from the State Appellate Defender's Office representing Matthew Gray. Good morning, Your Honors. Michelle Katz from the State Attorney's Office representing the People. All right, and you'll both be presenting the argument this morning. We don't have any time limits per se, but I will tell you both that we have read the briefs, we are familiar with the record, and so you don't need to spend a lot of time on that. So Mr. Bennett, if you'd like to proceed. Thank you, Your Honor. May it please the court. Good morning, Your Honors, counsel, those in attendance. My name is Chris Bennett from the office of the State Appellate Defender's Office, and I represent Matthew Gray. With this court's permission, I plan to focus on the first issue in the briefs, but will address the remaining issues throughout the argument. This case presents the odd situation of a long-dead dating relationship being used by the state to increase the defendant's class of conviction, sentencing range, and term of mandatory supervised release. The state also used the stale relationship to introduce otherwise inadmissible other crimes evidence. Both Matthew Gray and the complainant, Tina Parthran, repeatedly testified at trial that they had ended their dating relationship 15 years ago, and were merely friends in 2011. Both testified that they were not in a dating relationship in 2011. They were, however, in an intimate relationship. They had sex, allegedly by Tina, on one occasion on November 1st. Now, the Third District in 2012 found that up to 15 sexual encounters between two parties did not qualify as a dating relationship. In fact, in that case, those two parties denied they were in a dating relationship, similar to Matthew and Tina. What do you make of the fact that in the 911 call, according to the dispatcher, Matthew referred to Tina as his girlfriend? I don't think that's positive, whether it's a dating relationship where both parties repeatedly testified and denied there was a dating relationship in 2011. Tina was consistently questioned about this and repeatedly stated she was not interested in rekindling any sort of relationship with Matthew, nor wanted to move in with him. Now, despite there being no active dating relationship in 2011, and them being merely friends, the state charged Matthew with aggravated domestic battery of Tina. Now, an element of domestic battery is that the parties must be family or household members. And the statute defines family or household members as to include people who have or have had a dating relationship or engagement relationship. Thus, a person's prior dating relationship extends in perpetuity, allowing the state to charge someone with domestic battery decades after that person has ended their dating relationship with someone. As applied in this case, the lack of a temporal limitation to the statute bears no reasonable relationship to the public interest that the legislature sought to protect in the domestic battery statute. Well, Mr. Bendick, that sounds to me like a facial challenge. No, it is only as applied. People v. Wilson has made it clear that there is no facial challenge to this statute. But on the facts of this case, where the dating relationship ended 15 years ago, and where both parties specifically testified that there was no dating relationship since the late 1990s, and it's an as-applied challenge, and that the goals of the statute, and it's an unreasonable method of achieving that objective, in this case it just simply does not apply to Matthew, the goals that the legislature sought to enact. But you are not, it sounded a little bit in your reply brief like you were advocating a per se rule, that after the passage of a certain amount of time, whatever it is, a former dating relationship can never support a charge for domestic violence. I would suggest that that legislature should enact something like that, that should put a temporal limitation or, like Minnesota and Massachusetts, put in some sort of test for how long the relationship has been ended to determine whether the members are family or household members. I am simply saying that as an as-applied challenge in this case, it was an unconstitutional use of the state's police power to charge Matthew with domestic battery. What is the practical effect of the state pursuing this charge in addition to the other charge of just simple aggravated battery? Well, at first it raises the class offense from a class 3 felony, which is 2 to 5 years in prison, to a class 2 felony, which is 3 to 7 years in prison. It also increases the mandatory supervised release term from 1 year to 4 years. And it also allowed the state in this case to introduce otherwise inadmissible other crimes evidence under the propensity statute. Was there a motion filed by the state to allow this evidence in? There was. And what was the basis that was claimed that it was going to be relevant for? That there was a prior dating relationship, and you're saying their basis was that it was to prove propensity in this case, or to prove domestic battery under 115-7.4. And that's really one of the other reasons why this was an unreasonable use of the state's police power in this case. This had real consequences from that. It increased the term of punishment, it increased the mandatory supervised release term, and allowed them this evidence that would not have been admissible otherwise. Now, the Illinois Supreme Court, a people B. Wilson, suggested parties like Matthew and Tina, defining people like that as family and household members, would not be a reasonable use of the state's police powers. And the state here has not provided this court with any argument as to why a person who has ended their dating relationship 15 years ago would be a reasonable use of the state's police powers. If your honors have no further questions on the as-implied challenge, I'd like to turn to some of the other issues in the briefs. In presenting the other crimes evidence, the state violated Matt's right to confront his accusers. The two officers who told the jury about Matt's alleged prior incidents with Laura Moore, his longtime girlfriend, and a person we call his common-law wife, related testimonial statements from Laura that were inadmissible under binding United States Supreme Court precedent. And give me an example of a statement you say you would concede was non-testimonial. Matthew's hitting me right now. He's choking me right now. So the parameters that you believe apply require that the statement be made basically as the events are unfolding. No, that is not. I mean, in Hammond v. Indiana, the Supreme Court made it clear that if it's to relate towards a future prosecution, to preserve facts for a future prosecution about what happened in the past, those are testimonial statements. That's exactly what happened in this case. The officer in the 2011 incident asked specifically what happened. In Hammond v. Indiana, the court found that that was a testimonial statement and inadmissible absent the witness's testimony. In this case, there was clear error based on binding United States Supreme Court precedent. And the only question is whether that error was harmless beyond a reasonable doubt. It was harmless beyond a reasonable doubt because absent this other crimes evidence, the jury would have been left with Tina Carthrine's wholly incredible testimony. Additionally, let me let me posit that Mr. Gray raised a self-defense claim. That was he claimed that he used the knife to deflect the attack by Tina. In that circumstance, would evidence that he was the aggressor on prior occasions have arguably been relevant? It might have been relevant had the state sought to admit it for those purposes as well. However, the state did not do that here. The state needs to ask for that. Just because it was admissible under one basis does not mean it's admissible after the state's request. Additionally, the prosecutor in rebuttal closing argument relied on this other crimes evidence repeatedly as well as committed other numerous instances of misconduct. Thus, this confrontation clause error was not harmless. This court does need not address the constitutional claims. We can simply reverse Matthew's convictions outright because the state failed to prove him guilty beyond a reasonable doubt. Tina's self-admitted high level of intoxication during the events, both on November 1st and 2nd, alone warranted reversal. Her high level of intoxication made her unable to remember numerous salient details about the events. She could not remember whether she even bit Matthew on the morning of November 2nd at the preliminary hearing. At that same hearing, she was unable to remember if they had a verbal altercation on the morning of November 2nd before the incident occurred. Beyond her high level of intoxication, her version of events is simply implausible. For the many reasons explained in the brief, which you all highlighted here, she did not report being choked to Detective Williams at the hospital immediately after the incident. She told that same detective the incident happened at 1.30 a.m. when in fact it happened around 7 or 7.30 a.m. And after the incident, and instead of seeking help, she walked right by two responding officers, took two buses to her daughter's house 30 minutes away, all while supposedly having been choked and stabbed without provocation. Her testimony is simply incredible, and this court should reverse Matt's conviction outright. Your honors have no further questions. Reserve the remainder of your time in rebuttal and ask for relief in the briefs.  Thank you, your honors. Again, my name is Michelle Katz. I'm a Cook County Assistant State's Attorney appearing on behalf of the people. The defendant alleges that he was improperly charged with the offense of aggregated domestic battery, where application of that statute constitutes an unconstitutional as-applied application to him. Here's the problem with his claim. There is a mechanism when a defendant wants to interpose that sort of objection, and it wasn't utilized in this case. What the defendant should have done and did not do was file a motion to dismiss the charges. Instead, the only way that he sought to attack the validity of whether or not there was a present dating relationship was through an objection to the people's motion to admit evidence of other crimes. Because he did not do what he needed to do, and the basis for this court to find that that's what he needed to do is found in the very case that both parties rely on, which is the case of People v. Wilson. Because in Wilson, what did the defendant do? The defendant filed a motion to dismiss the charges against him, alleging that they were unconstitutional because there wasn't a present dating relationship. And then there was litigation over that issue in the form of an evidentiary hearing. And based on that evidentiary hearing, that left the Illinois Supreme Court in a position where it could actually properly look at this question, look at the evidence that was adduced, and determine based on that evidence whether or not there was a present dating relationship between the parties. But don't we have extensive evidence in this record of the relationship between Matthew and Gina? We have evidence, and it's our position that the evidence is sufficient for this court, on review of this forfeited claim, to find that there was an active, there was a resurrection of the dating relationship that had previously occurred, and in the alternative, that the 15 years that had transpired did not make application of the statute unconstitutional as applied to this defendant, given the facts and circumstances that were developed. Which is what this court, if it is inclined to consider this claim, has been instructed by the Supreme Court, is the appropriate thing to do. And that is to look at the totality of the facts and circumstances that were presented. The problem is that because the objection wasn't interposed, the state proceeded just on what is provided by the statute, which is either a past or a present dating relationship. So there was no development of a lot of the contours of this relationship between these parties because it wasn't necessary. There may have been more facts that could have come out. Yes. One of the issues that I have here is that the jury was instructed on what constitutes a dating relationship, and there was nothing in there to indicate that ordinary fraternization does not constitute a dating relationship. My understanding is that there were no objections interposed, and that's not been raised, and it's an issue on appeal. So therefore, under well-established precedent of the Illinois Supreme Court, that's beyond the scope of what this appeal is designed to deal with. But there's clearly no doubt that the defense took the position that this was too remote of a relationship, and that this was not a dating relationship, and that these two individuals were simply friends, and this was placed in front of the jury. Even without that particular instruction, that was still more or less at play in this case. It's not that there was a change in the theory. But when you look at the facts that were adduced, even though this wasn't specifically raised, and again, it's the people's position just to be very clear that we are not saying a defendant is incapable of raising an as-applied challenge if it wasn't raised below. What we're saying is that when the claim is one like this, where it is integrally tied into the sufficiency of the charging document, and that claim is not interposed, and there is no litigation or development of facts, and it hinges on facts, that it's not properly subject to review at this juncture, that the defendant remains fully able to bring a challenge to the sufficiency of the evidence. But in terms of bringing it in this manner, it is improper, and we rely on People v. Mosley for that proposition, where the defendant who wanted to challenge the constitutionality of the UW statute insofar as he was, I believe, 18 years old, and he wanted to say that it was unconstitutional as applied to him because he wasn't capable of getting an FOID card because he had to have the permission of his parents to do so since he was under 21, and his parents were felons, and therefore he couldn't obtain it. And the Illinois Supreme Court said, no, we're not going to consider this claim. There hasn't been any development of facts. But turning to the facts that were presented, here you have got ample evidence, and we acknowledge that Tina said that she wasn't in a dating relationship. The defendant said they weren't in a dating relationship, but an objective person, and let's call that objective person the trial court in this case, in ruling on the second time, after Tina testifies, the propriety of putting in the evidence of other crimes. The trial court says, based on her testimony, I think that there's enough that has shown it's been made that there's a dating relationship, as in a present active dating relationship. And the evidence of record bears that out because you have, unlike the cases that the defendant relies on, a past relationship that was a two-year dating relationship 15 years ago, and then you have facts that indicate that the defendant invites, has had the victim over to his house four to five times in the period of a couple of months. He has her over to his house. He provides alcohol. He provides cigarettes. They're going to get together. They're going to drink. After the point at which she comes to the house, the defendant receives a phone call from a person, Laura, who he refers to as his common-law wife. He turns the music off. He sneaks off into the bathroom. He closes the door. He has a conversation with Laura, indicating that he's going to take a nap and he's going to see her later. There is an argument that ensues. Does the defendant testify that there wasn't an argument? Yes, he does. But when he is questioned by the detectives, he admits that there was an argument because of that phone call and that he was defending the honor of his common-law wife. You have that evidence of record. In addition to that, you have the fact that the two of them, according to Tina's testimony, and it's reluctantly given at the end of her examination is that the two of them had sex. She had no reason. It's not an element of any of the offenses in this case. She had no reason to just throw that into the case. She alleges that they had sexual relations that evening. She is in her bra and panties when this offense occurs. The defendant admits that he stabbed her, although he says just gently stabbed her in the back. She has a stab wound in her chest as well. It just seems like it's an abuse of the English language to suggest that this is a dating relationship. I mean, are you saying that a Tinder hookup would be something that's a dating relationship so that you could use this statute? No, and you've got clear cases that talk about, here's the thing, and this is where I agree with the defense. There's a dichotomy within the statute. There is a situation for past relationships, a past dating relationship, and then there's a situation that attends present dating relationships. And there's a body of appellate court cases that have developed dealing with the question of what constitutes a dating relationship, a present dating relationship, or is it an acquaintanceship? And this case falls outside of those cases because you have the past relationship, because the legislature recognized that once, first of all, they want to protect people from the results of domestic violence. In here is a recognition, and really the statute shows how wise the legislature was in enacting this without a temporal limitation because there is a vulnerability that exists when somebody has been in a relationship with someone else. So you don't start at square one. When you come with the past relationship up until the present time, that is different than embarking on a new relationship and the question of is it going to be regarded as a dating relationship. But can't the fact that two people get together after 15 years and rekindle a little physical relationship, can't that constitute ordinary fraternization? Maybe, but not in this case. And that's what the court instructs in Wilson. I disagree with the defendant's characterization of it as sort of imagining a situation where it would not be sufficient. I'm not saying that that situation doesn't exist. Yes, there would be a point in time. But, Your Honor, Justice Mason, as you've pointed out, defense counsel has said it out very clearly in his brief, and he says as a matter of law, there needs to be a point at which it's not a dating relationship. That as a matter of law language is completely inappropriate given the instruction that's been given by our Illinois Supreme Court. Every case has to be judged on its own particular facts and circumstances. But you would agree, then, with the concept that there can be an as-applied challenge when the case involves a past dating relationship that has been long over. It's my position, yes, there can be an as-applied challenge. But, again, I go back to it needs to be done the way that it was done in Wilson, with a challenge through a motion to dismiss and an evidentiary hearing. In the absence of that, could there ever be an imaginable set of facts where there's sufficient litigation of the issue to establish clearly that there's not a dating relationship? I think that that's possible. But based on the facts of this case, this is not that case. And because the defendant forfeited that claim, he has an obligation to show affirmative, clear error of record. And his claim of error is necessarily conditioned on the position that this is a long-dead, 15-year relationship, and you don't have the evidence to support that, to unambiguously say, yes, it's just a 15-year-old defunct relationship, not on the basis of this undeveloped record that you have. But without that allegation, without that charge, if you don't get in what had happened between him and his girlfriend, common-law wife, it's a much different case that's being tried. Sure. In terms of the evidence. But here's the problem that I have with that. It's been a complete mischaracterization of the record by opposing counsel to stand before this tribunal and say that the only basis that this evidence, proof of other crimes, was admitted was under the propensity statute. And so if you look at page 51 of the common-law record, which is the people's motion to admit proof of other crimes, it begins with a factual recitation of what happened, and then part two, which is on page 52, it says, the heading, the prior incidents are admissible to show the defendant's state of mind, motive, and intent. That's the first argument that was raised. But if you have a domestic battery case and there's a more or less presumption in the Act that if there are prior instances of domestic battery, they can be considered, assuming they meet the other requirements for admissibility. Yes. That's a much easier road to hoe for the state than starting from scratch and saying we have an altercation between two people and, by the way, we want to introduce evidence of another altercation a year earlier between the defendant and somebody else. Absolutely. And that's because the legislature, when it created the propensity statute, recognized that these kind of cases were going to be treated differently. And again, going to that propensity statute, all it requires is that the defendant be accused of this type of offense, bringing me back to the problem that he's jumping in to try to attack the admissibility of the proof of other crimes, and he should have been attacking the underlying charges. But putting aside, yes, Your Honor, absolutely it's an easier road to hoe, but the trial court made an express finding in this case that there were alternative bases for the admission of this evidence, and it was extensively litigated. And here, the defendant claimed the affirmative defense of self-defense, and from the outset, when he stood before the jury and gave his opening remarks, he said, you're going to hear from the defendant. He's going to tell you he acted in self-defense, putting his intent squarely at issue. So to the extent that this proof of other crimes evidence was admitted, there was an alternative basis. So to say that there's this sort of domino effect because the state improperly charged, and because the state improperly charged, they reap this unfair benefit of being able to prove, put inadmissible evidence in front of this jury is just not true. Well, then that brings us to the issue of how the evidence got in. It wasn't Laura Moore testifying that on these two prior occasions. It was two police officers who responded to the scene after the events had unfurled. Absolutely, and the defendant challenges the admission of those statements as being violative of the Sixth Amendment and the Crawford line of cases emanating from the United States Supreme Court. As this court's well aware, the first inquiry has to be whether or not the introduction of that private, the evidence of prior crimes violated state law, meaning was it in violation of the prohibition against hearsay? And it was not, and this was too extensively litigated with expressed rulings by the trial court as to the fact that the statements came in either as excited admissions or as a statement for purposes of medical treatment and diagnosis. So with respect to the two episodes that occurred within, I think one's about a year before this incident and one's in the neighborhood of eight months, both of them were testified to, it is true, by the police officers who were called, who responded to calls of domestic disturbances, who both responded almost immediately after the incident occurred. When you look at the first incident, there is no questioning. So we're looking at the exception for excited utterances or spontaneous declarations. It's the same thing, and it's specifically Rule of Evidence 803-2. And there's a whole body of case law that discusses when something is properly regarded as an excited utterance. And the factors have all been set out, but generally we're relying on people versus Sutton because Sutton is the dispositive case. And Sutton talks about the need to show a startling occurrence or event, absence of time to fabricate, and that the statement that's being recounted relates to the circumstances of the occurrence. And here you clearly have all three of those factors met because you have, with respect to the first incident, which occurred on September 2nd of 2010, the officer responding 20 minutes after the offense, it's Officer Murray, he sees the defendant outside with his mother. Laura, and this is the same person ostensibly who he went in the bathroom to make the phone call to, his common-law wife of 15 years, comes outside. She has not asked a single question. That is the express testimony of the officer who sees, who witnesses, eyewitnesses, a bruise under her eye, a busted lip, and she's limping on her leg, and has her transported to the hospital where she's ultimately diagnosed with a broken ankle and facial contusions. And he observes that the individuals, her and the defendant, are both heavily intoxicated, and she tells the officer that her boyfriend, the defendant, just kicked her down the stairs and hit her in the eye. That is a classic excited utterance, as is the second incident, which is recounted from February 2nd of 2011, where the officer responds again to a call of domestic disturbance, and he is outside and he sees Laura with redness around her neck, and he asks a single question, what happened? And I vehemently disagree with my opponent that the asking of that single question, what happened, is violative of the Confrontation Clause. I agree overall- It's not violative of the Confrontation Clause. What I understand Mr. Bendick to be saying is that it makes it testimonial. Right. Because the events are past, and when the officer says to Laura what happened, and she recounts to him what happened in the past, that's for purposes of pursuing legal proceedings. It's not an emergent situation. She's not asking for help. She's saying, he did this to me. I disagree with that characterization, and I don't think that it's in keeping with the Illinois Supreme Court's holding in Sutton, and I don't think that it's in keeping with the United States Supreme Court cases where Hammond, which the defendant's relying on, is a situation where the victim says everything's okay, nothing's happening, and then the police persist in investigating. And if you look, it's interesting because the most recent Illinois Supreme Court case ends with the Hammond-Davis line, and then subsequent to that we have People v. Bryant, which somewhat alters the test to be when we have an encounter between a police officer and a civilian. Under Stackley and under Sutton, the court was looking at the primary purpose, and they were looking at it through the eyes of the police officer. Now, subsequently you have People v. Bryant, which tells you it's a combination of the intent of the declarant as well as the intent of the person who is asking the question. No matter what test this court uses, these police officers were there responding to an emergency situation. They were not trying to make a case, nor was the victim in that situation trying to give what was tantamount, this is sort of a test, tantamount to testifying in court. That's not what was transpired. So based on the applicable case law, it's the people's position that there is no, that these are excited utterances, they are non-testimonial, they are not violative of the Sixth Amendment or any of the principles announced in Crawford, and they were properly admitted through those officers. Now, one admission that needs to be made is that insofar as the testimony of the doctor was concerned, this is on the first incident, the doctor does erroneously identify the defendant as being the person whom the victim identifies as having caused these injuries to her. And the trial rightly, first of all, in terms of the people's motion, we had specifically said that we were not going to get into the identity question. The court makes an express finding that there's an English as a second language issue, that nothing that the police, that the people did elicited intentionally that response, which it was, and immediately instructed that jury that they were not to consider the fact that that identification had been made. I mean, it was handled, you have a very active judge who was engaged and making rulings and reconsidering the admissibility of this and making a very good record for purposes of appeal as to what was and wasn't before this jury. So, and then as a final point, which I don't want to belabor, even if this court were to find that the admission of those statements was erroneous, as this court's well aware, under People v. Patterson, that would be subject to being proved harmless beyond a reasonable doubt, and it's our position that that would be the case. With respect to, finally, the claim that the defendant was not proven guilty beyond a reasonable doubt and the claim that all you have to do is look at the victim's testimony, that's not the way that it works. The defendant had alleged a defense of self-defense. He had essentially admitted that he stabbed her. The question was whether or not he had a reasonable belief in his need to defend himself, and he didn't. And that's evidenced by the fact that, let's start with the 911 call. He says that his girlfriend, dovetailing back to the first issue, his girlfriend stabbed him and that he thought that he had hurt her. Well, he clearly testified that she never did stab him. So the defense of self-defense that he tried to build in right from the beginning was completely eradicated by the trial testimony that followed. I have to question you on that. When he's making the call, he doesn't, to me, doesn't sound like he's a perpetrator. And when she leaves and goes right past the police, doesn't even go up to the police, she's not particularly acting like a victim. She's not because she is, and again, this is where the statute is designed expressly to protect this sort of person. The fact that she is highly intoxicated, which she was. The fact that she is highly intoxicated, she was over five times illegal. Absolutely, absolutely. She was. There's no denying it. And she was obviously down on her luck. And there's a question as to whether or not she has a residence. And there's a question about what she can recall because she was so drunk at the time that this offense occurred. But there's no getting around the fact that she suffers two stab wounds. He only admits to one. One in her chest, one in her back. Are her actions in keeping with what a sober person would do by walking past police, getting on two buses? They're not. It doesn't make her any less of a victim. You've got DNA evidence, not only her blood on the knife, his fingerprints. You've got overwhelming evidence that he is the one that stabbed her. And the question turns to whether or not we were able to defeat his claim of self-defense. And his self-defense claim wasn't even set out in a proper fashion from the outset based on that 911 call. So given all of the evidence that was presented in this case, it's the people's position that there's certainly enough under the traditional Jackson standard for this court to absolutely say that we can't say that no rational trier of fact would have been able to convict based on this evidence, especially taking that evidence, again, in conjunction with the proof of other crimes, because that has to be part of the mix, independent of the defendant's claim that that evidence was wrongfully admitted at trial. So for those reasons and the reasons articulated in our brief, we would ask that you affirm the defendant's convictions and sentences. Thank you. Thank you, Ms. Katz. Mr. Bender? Mr. Bender? Just a few points, Your Honors. The state says that the proper vehicle for the as-applied challenge would have been in motion to dismiss the indictment. That's one of the avenues. However, this court has consistently and repeatedly addressed identical as-applied challenges. People v. Peacock, 2005. People v. Darren Jackson was a first district case, 341-LF-583. The Peacock was a fourth district case. Those are all as-applied challenges to the same statute, raised for the first time on direct appeal. The record here is sufficient. The state concedes that when making their argument that this was a dating, active dating relationship. By doing that, they can see that there's enough evidence in the record for an as-applied challenge here. And below, they had the chance to present more evidence as a, for an active dating relationship because the defense did challenge the time between the prior dating relationship and the friendship now. And when asked by the court for its rationale, simply relied upon that 15-year-ago dating relationship. And the state's citation to people v. Mosley, that was a state appeal. That was not from a conviction, a direct appeal. It was a state appeal. It is inapplicable in this case. What relief are you requesting? So on the first issue, we are asking for a vacation of the aggravated domestic battery convictions and remand for new trial, absent any evidence that came in, because it was a domestic case. Where is the defendant today? He is out on MSR. He'll be, he's scheduled to serve four years on MSR because this was an aggravated domestic battery statute. It was released in January of this year. On the... So as a practical matter, the defendant has been released. He's still on MSR. Are we talking about a new trial? That is one of the avenues that we're asking for because he still has on his background a Class II felony, an aggravated domestic battery conviction, which can be used in the future to enhance, God forbid something were to happen in the future, to use it as an enhancer, another crime. So yes, we'd be asking for a new trial if that is one of the issues that you provide relief on. Obviously, you wouldn't have to do that if you were versed outright on the reasonable doubt issue, and our contention is that Tina Carthron, simply her high-level intoxication, as you noted, Justice Mason, we can't believe anything she said, frankly. This woman had no idea what was going on. Isn't that extraordinary on appeal for a reviewing court to say, reviewing the record, even though the trier of fact, the jury, evidently believed her testimony, that she can't be relieved? It is extraordinary relief, and this is one of those cases where it begs for extraordinary relief because you have a witness that was so wholly incredible and flip-flopped all over trial with her preliminary hearing testimony or statements just after the offense. The defendant isn't the world's best historian of events either. And we're not saying that, Your Honor. It's the state's burden to prove the defendant guilty beyond reasonable doubt, and their witness simply did not do that. And just quickly to address the confrontation clause issue, the issue is whether it's testimony or non-testimony, not whether it's an excited utterance. We don't need to get to that. We determine whether it's testimonial or non-testimonial, and Hammond v. Indiana clearly indicates that this was testimonial statements by Lorimer that got in without her testimony, that violated Matthew Gray's confrontation rights, and it was not harmless error. Your Honor, if you have no further questions, we ask for relief in the briefs. Thank you. Thank you. And thank you to both sides for excellent arguments here this morning, very interesting issue and excellent briefs. We will take the matter under advisement. All rise.